UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 2434 ST. CHARLES AVENUE CONDOMINIUM HOMEOWNERS ASSOCIATION, INC. | * | CIVIL ACTION |
| | * | NO. 23-5564 |
| VERSUS | | |
| | * | SECTION L |
| INDEPENDENT SPECIALTY INSURANCE COMPANY ET AL | | |

## ORDER & REASONS

Before the Court is Defendants' Motion to Compel Arbitration and to Stay or, Alternatively, Dismiss These Proceedings. R. Doc. 7. Plaintiff has not filed an opposition. Having considered the briefing and the applicable law, the Court rules as follows.

### I. BACKGROUND

This case arises out of alleged damage to property owned by Plaintiff 2434 St. Charles Avenue Condominium Homeowners Association, Inc. ("Plaintiff" or "the HOA") in New Orleans, Louisiana following Hurricane Ida. R. Doc. 1-2 at 2-3. Defendants in this matter are Independent Specialty Insurance Company ("ISIC"), Certain Underwriters at Lloyd's ("Lloyd's"), and Other Insurers Subscribing to Binding Authority B604510568622021 ("Other Insurers") (collectively, "Defendants" or "Insurers"). R. Doc. 1.

According to the HOA, the building "suffered extreme damage and losses" following the hurricane and it timely reported these claims to the underwriter of its insurance policy, Velocity Risk Underwriters, LLC ("Velocity"). R. Doc. 1-2 at 2-3. Velocity then worked with Sedgwick Delegated Authority ("Sedgwick") to administer the claim, and the HOA alleges that either

1

Velocity and/or Sedgwick then engaged inspectors to determine whether the damage and losses were covered by the policy. *Id.* at 3. The HOA alleges that an advance payment of $150,000 was made by the Insurers during the investigation and that ultimately, they determined covered damages totaling significantly less than the HOA calculates, and the HOA seeks the difference of $1,743,687.30. *Id.* at 3-5.

The HOA claims it submitted satisfactory proof of loss but that the Insurers declined further coverage and then invoked the policy's arbitration clause. *Id.* at 4. Further, the HOA alleges that after invoking the arbitration clause, the Insurers then deliberately delayed the process by refusing to timely select a third disinterested impartial umpire, "despite the [Homeowners] Association's arbitrator's best efforts." *Id.* at 5-6. The HOA thus alleges breaches of the policy and bad faith claims. *Id.* at 6-7. The policy contains an arbitration clause, which contains in pertinent part:

> 4. Arbitration Clause
>
> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including the policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.
>
> Unless the parties agree upon a single disinterested or impartial Arbitrator within thirty (30) days of one party receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his or her disinterested or impartial Arbitrator and give written notice to the Respondent (the party receiving notice of Arbitration). Within thirty (30) days of receiving such notice from the Claimant, the Respondent shall appoint his or her Arbitrator and give written notice to the Claimant.
>
> If the two Arbitrators fail to agree on the selection of the disinterested or impartial umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list of three Umpire candidates, each Arbitrator shall select one name from the list submitted by the other and the Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators. Unless the parties otherwise agree, the Arbitration Tribunal shall consist of disinterested or impartial persons presently or formerly employed or engaged in a senior position in insurance underwriting or claims.

> The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders which it may consider proper in the circumstances of the case, regarding pleadings, discovery, inspection of documents, examination of witnesses and any other matter relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall think fit. . . .
>
> The award of the Arbitration Tribunal shall be in writing and binding.
>
> Policy, R. Doc. 1-3 at 37-38.

The HOA filed suit in the Civil District Court for the Parish of Orleans and the Insurers removed the case to federal court pursuant to federal question jurisdiction as this case involves arbitration and the New York Convention. R. Doc. 1. Defendants filed an answer which generally denies the allegations in the petition and asserts a counterclaim against the HOA seeking declaration that the matter requires referral to arbitration. R. Doc. 5.

## II.   PRESENT MOTION

Defendants filed the instant Motion to Compel Arbitration and to Stay or, Alternatively, Dismiss These Proceedings, arguing that the arbitration clause is enforceable under both the Federal Arbitration Act ("FAA") as well as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention") and that the Court must therefore refer this matter to arbitration pursuant to the policy. R. Doc. 7. Pursuant to the FAA and the United States Supreme Court's "liberal federal policy favoring arbitration agreements," Defendants argue that the Court must begin with a presumption that the agreement to arbitrate is enforceable. R. Doc. 7-1 at 7. Courts determining whether to refer a matter to arbitration under the FAA undertake a two part test, and Defendants argue that once this Court finds the agreement valid, the inquiry ends and this supports an arbitration referral. *Id.* at 9-10. Defendants explain that the Insurers include citizens of England and Wales and this brings the arbitration agreement under the New York Convention's purview, and Defendants argue that this too compels arbitration. *Id.* at 7-9.

3

Plaintiffs have filed no response in opposition.

### III.     APPLICABLE LAW

Courts conduct a two-step analysis when determining whether an arbitration agreement is enforceable under the FAA: first, courts look to contract formation – "whether the parties entered into any arbitration agreement at all," and second, courts determine whether the claim at issue is "covered by the arbitration agreement." *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201-02 (5th Cir. 2016). However, a delegation clause limits the court's analysis. *Id.* The court conducts the contract formation inquiry and if it finds a valid agreement, the "only question" is then "whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* at 202. The Fifth Circuit instructs that in such cases, courts should grant the motion to compel in almost all cases, citing only one narrow exception – the "wholly groundless" exception – which has since been abrogated by the Supreme Court. *Id.* at 202 n.1 (citing *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014), *abrogated by Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 531 (2019)).

A delegation clause contained in an arbitration provision "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). For example, in *Rent-A-Center*, the Supreme Court addressed a delegation clause that "gave the arbitrator 'exclusive authority to resolve any dispute relating to the … enforceability … of the" contract. *Id.* at 71. In *Kubala*, the Fifth Circuit found a delegation clause valid and therefore remanded the matter for the district court to refer it to arbitration.

*Kubala*, 830 F.3d at 204. The delegation clause at issue in *Kubala* was "strikingly similar" to the clause in *Rent-A-Center*, as it gave the arbitrator "sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute." *Id.*

The New York Convention may separately require arbitration. "In determining whether the Convention requires compelling arbitration in a given case," the Court "conduct[s] only a very limited inquiry." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). An agreement "falls under" the New York Convention and the Court should compel arbitration only if four prerequisites are met: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen*." Id.* (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985)); 9 U.S.C. § 202.

### IV. ANALYSIS

The Court begins with the FAA and the first step in determining the enforceability of an arbitration agreement: the contract formation analysis. *See Kubala*, 830 F.3d at 201-02. Here, the Court finds that the policy represents a valid contract. The parties negotiated for insurance and mutually agreed to the policy at issue. Further, the HOA has itself sought to arbitrate this matter under the policy by selecting its arbitrator and proceeding pursuant to the process outlined in the policy. *See* R. Doc. 1-2 at 5-6.

The Court further finds that the arbitration clause contains a valid delegation clause, which reads:

> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including the policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.

The parties agreed to refer "[a]ll matters in dispute" to arbitration if they relate to the insurance policy, including matters involving "the policy's formation and validity." This "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated" and accordingly the Court refers this matter to arbitration. *See Kubala*, 830 F.3d at 202.

The New York Convention independently provides support for arbitration, as all four prerequisites are clearly satisfied. The arbitration clause is (1) a written agreement to arbitrate in (2) Tennessee, which is within the United States, a signatory of the Convention, (3) the agreement arose out of the insurance relationship between the parties – which is a commercial relationship, and (4) several Defendants are not American citizens.

Accordingly, for the foregoing reasons, Defendants' Motion to Compel Arbitration, R. Doc. 7, is **GRANTED**. This matter is hereby **REFERRED** to arbitration and thus **STAYED AND ADMINISTRATIVELY CLOSED** pending the outcome of arbitration.

New Orleans, Louisiana, this 18th day of January, 2024.

_____
United States District Judge

6